CNR/LTG
F. #2015R

 

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★   JUL 07 2015   ★

**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -

RICHARD BLAIN,
    also known as "Black,"

             Defendant.

– – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    -  against  -

THE PREMISES KNOWN AND DESCRIBED
AS 70 DORLON STREET, HEMPSTEAD,
NEW YORK, APARTMENT "A",
A FIRST-STORY APARTMENT LOCATED
IN A TWO STORY, BRICK APARTMENT
BUILDING (THE "SUBJECT PREMISES").

– – – – – – – – – – – – – –X

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN
SUPPORT OF
APPLICATION FOR
ARREST WARRANT
AND SEARCH
WARRANT

(21 U.S.C. §§ 841(a)(1),
841(b)(1)(B)(iii) and
841(b)(1)(C); 18 U.S.C. § 2))

# MJ - 15 0620

EASTERN DISTRICT OF NEW YORK, SS:

        RICHARD J. SHAW, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as

such.

        On or about April 23, 2014, within the Eastern District of New York, the

defendant RICHARD BLAIN, also known as "Black," together with others, did knowingly and

2

intentionally distribute and possess with intent to distribute a controlled substance, which offense involved cocaine base, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); Title 18, United States Code, Section 2))

On or about September 30, 2014, within the Eastern District of New York, the defendant RICHARD BLAIN, also known as "Black," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved cocaine base, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); Title 18, United States Code, Section 2))

On or about November 12, 2014, within the Eastern District of New York, the defendant RICHARD BLAIN, also known as "Black," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved cocaine base, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); Title 18, United States Code, Section 2))

On or about April 7, 2015, within the Eastern District of New York, the defendant RICHARD BLAIN, also known as "Black," together with others, did knowingly and intentionally distribute and possess with intent to distribute controlled substance, which offense involved 28 grams or more of a substance containing cocaine base, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii); Title 18, United States Code, Section 2))

On or about July 1, 2015, within the Eastern District of New York, the defendant RICHARD BLAIN, also known as "Black," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved cocaine base, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); Title 18, United States Code, Section 2))

Further, upon information and belief, there is probable cause to believe that there is currently being kept and concealed at THE PREMISES KNOWN AND DESCRIBED AS 70 DORLON STREET, HEMPSTEAD, NEW YORK, APARTMENT "A", A FIRST-STORY APARTMENT LOCATED IN A TWO STORY, BRICK APARTMENT BUILDING (the "SUBJECT PREMISES"), within the Eastern District of New York, certain property, namely the items set forth on Attachment A hereto, all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841(a). The items to be seized include any of the above items that are maintained within other closed or locked containers, including safes and other containers that may be further secured by key locks (or combination locks) of various kinds.

The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1]     Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

## I.   INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been for approximately eighteen years.   During my tenure with the FBI, I have participated in numerous gang and narcotics investigations, during the course of which I have conducted physical and wire surveillance, executed search warrants, and participated in controlled purchases of narcotics and firearms.   Through my training, education and experience – which has included debriefing numerous cooperating gang members and drug traffickers – I have become familiar with the manner in which illegal drugs are distributed, the method of payment for such drugs and the efforts of persons involved in such activity to avoid detection by law enforcement.   I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

## II.  THE DEFENDANT

2.      Upon information and belief, the defendant RICHARD BLAIN, also known as "Black," is a distributor of cocaine base, also known as "crack cocaine," and firearms in and around Hempstead, New York.

## III.  PROBABLE CAUSE TO ARREST

3.      Since approximately April 2010, the FBI has been investigating gang activity and drug trafficking in and around Hempstead, New York..   During the course of the

investigation, the FBI has obtained information about targets of the investigation with the assistance of a confidential source ("CS 1").[2]

    4.      On or about April 23, 2014, CS 1, at the direction of law enforcement, placed a consensually recorded phone call to defendant RICHARD BLAIN, also known as "Black," who used phone number (516) 450-0785, which was registered to "Lakeisha Blain" (the "0785 Phone").  During the conversation, BLAIN agreed to meet with CS 1 at the SUBJECT PREMISES to sell CS 1 a quantity of cocaine base for $900.  Prior to meeting with BLAIN that day, law enforcement officers searched CS 1 with negative results, provided CS 1 with $900 in "buy" money and activated an audiovisual recording device that was placed on CS 1 to record the meeting with BLAIN.  CS 1 met BLAIN inside the SUBJECT PREMIES, gave BLAIN the $900 in "buy" money and received from BLAIN a quantity of a white rock-like substance in a clear plastic bag.  CS 1 then met with law enforcement officers who recovered the recording device and the plastic bag containing the rock-like substance.  Drug lab testing of the substance obtained from BLAIN confirmed that BLAIN sold approximately 12.3 grams of cocaine base to CS 1 on that date.

    5.      On or about September 30, 2014, CS 1, at the direction of law enforcement, placed a consensually recorded phone call to defendant RICHARD BLAIN, also known as "Black," who used the 0785 Phone.  During the conversation, BLAIN agreed to meet with CS 1 at the SUBJECT PREMISES to sell CS 1 a quantity of cocaine base for $1,000. Prior to meeting with BLAIN that day, law enforcement officers searched CS 1 with negative

---

[2] CS 1's information has been corroborated by physical evidence, information obtained from other witnesses and recorded conversations, among other things.   As such, I believe the information provided by CS 1 to be reliable.

results, provided CS 1 with $1,000 in "buy" money and activated an audiovisual recording device that was placed on CS 1 to record the meeting with BLAIN.  CS 1 met BLAIN inside the SUBJECT PREMISES, gave BLAIN the $1,000 in "buy" money and received from BLAIN a quantity of a white rock-like substance in a clear plastic bag.  CS 1 then met with law enforcement officers who recovered the recording device and the plastic bag containing the rock-like substance.  Drug lab testing of the substance obtained from BLAIN confirmed that BLAIN sold approximately 16 grams of cocaine base to CS 1 on that date.

6.     On or about November 12, 2014, CS 1, at the direction of law enforcement, placed a consensually recorded phone call to defendant RICHARD BLAIN, also known as "Black," who used phone number (347) 777-8332, (the "8332 Phone").   During the conversation, BLAIN agreed to meet with CS 1 at the SUBJECT PREMISES to sell CS 1 a quantity of cocaine base for $1,000 and a handgun for $800.   Prior to meeting with BLAIN that day, law enforcement officers searched CS 1 with negative results, provided CS 1 with $1,800 in "buy" money for the cocaine base and the handgun and activated an audiovisual recording device that was placed on CS 1 to record the meeting with BLAIN.  CS 1 met BLAIN inside the SUBJECT PREMISES, gave BLAIN the $1,800 in "buy" money for the cocaine base and the handgun and received from BLAIN a quantity of a white rock-like substance in a clear plastic bag and a loaded Arminius .38 caliber revolver handgun.  CS 1 then met with law enforcement officers who recovered the recording device, the plastic bag containing approximately 15 grams of crack cocaine and the handgun.

7.     On or about April 7, 2015, CS 1, at the direction of law enforcement, placed a consensually recorded phone call to defendant RICHARD BLAIN, also known as "Black," who used the 8332 Phone.   During the conversation, BLAIN agreed to meet with CS

1 at the SUBJECT PREMISES to sell CS 1 a quantity of cocaine base for $2,500. Prior to meeting with BLAIN that day, law enforcement officers searched CS 1 with negative results, provided CS 1 with $2,500 in "buy" money and activated an audiovisual recording device that was placed on CS 1 to record the meeting with BLAIN. CS 1 met BLAIN inside the SUBJECT PREMISES, gave BLAIN the $2,500 in "buy" money and received from BLAIN a quantity of a white rock-like substance in a clear plastic bag. CS 1 then met with law enforcement officers who recovered the recording device and the plastic bag containing in excess of 28 grams of crack cocaine. The $2,500 in "buy" money provided by CS 1 to BLAIN only paid for a portion of the cocaine base provided by BLAIN that day, and the additional cocaine base BLAIN "fronted," or provided on consignment, to CS 1 to be paid for at a later date.

8. On or about May 13, 2015, CS 1 met with the defendant RICHARD BLAIN, also known as "Black," and another individual in the vicinity of West Marshall Street and South Franklin Street in Hempstead, New York. Prior to meeting with BLAIN that day, law enforcement officers searched CS 1 with negative results, provided CS 1 with $900 in "buy" money (as partial payment for the cocaine base "fronted" on April 7, 2015) and activated an audiovisual recording device that was placed on CS 1 to record the meeting with BLAIN. CS 1 paid BLAIN the $900 in "buy" money and then met with law enforcement officers who recovered the recording device.

9. On or about June 1, 2015, CS 1 met with the defendant RICHARD BLAIN, also known as "Black," inside the SUBJECT PREMISES to make the final $900 payment for the cocaine base "fronted" by BLAIN to CS 1 on April 7, 2015. Prior to meeting with BLAIN that day, law enforcement officers searched CS 1 with negative results, provided

CS 1 with $900 in "buy" money and activated an audiovisual recording device that was placed on CS 1 to record the meeting with BLAIN. CS 1 paid BLAIN the $900 in "buy" money inside the SUBJECT PREMISES and then met with law enforcement officers who recovered the recording device.

10. On or about July 1, 2015, CS 1, at the direction of law enforcement, met with the defendant RICHARD BLAIN, also known as "Black," inside the SUBJECT PREMISES in order to make a controlled purchase of $500 of cocaine base. Prior to meeting with BLAIN that day, law enforcement officers searched CS 1 with negative results, provided CS 1 with $500 in "buy" money and activated an audiovisual recording device that was placed on CS 1 to record the meeting with BLAIN. CS 1 met BLAIN inside the SUBJECT PREMISES, gave BLAIN the $500 in "buy" money and received from BLAIN a quantity of a white rock-like substance in clear plastic bags, which he retrieved from a bucket next to the couch in the living room area of the SUBJECT PREMISES. CS 1 also observed additional quantities of what appeared to be cocaine base in the bucket and also observed quantities of other controlled substances, including what appeared to be marijuana and alprazolam. CS 1 then met with law enforcement officers who recovered the recording device and the plastic bag containing approximately 13 grams of crack cocaine.

IV. PROBABLE CAUSE TO SEARCH THE SUBJECT PREMISES

A. EVIDENCE COMMONLY FOUND AT RESIDENCES OF AND PROPERTIES MAINTAINED BY DRUG TRAFFICKERS

11. Based on my training and experience, participation in other drug investigations, execution of search warrants, debriefing of confidential sources and extensive discussions with other experiences law enforcement officers, I am familiar with how various

drugs are used and the typical distribution and trafficking methods used by drug dealers and traffickers.

   12.   In a substantial number of residential searches executed in connection with drug investigations, the following kinds of drug-related evidence typically have been recovered:

   a.   Members of drug organizations often maintain close at hand the addresses, telephone and pager numbers of their criminal associates, including information pertaining to their sources of supply and customers, in address books, mobile telephones and on documents.

   b.   Telephone bills and records of calls to telephones and pagers are also maintained for lengthy periods of time in defendant's homes.  Such records constitute important corroborative evidence in drug conspiracy cases because the defendants call one another regularly, especially just before and after an incident involving an act committed in furtherance of the conspiracy.

   c.   Drug traffickers frequently maintain in their residences quantities of controlled substances.  They also maintain paraphernalia for packaging and distributing controlled substances, such as scales, plastic bags, heat-seal devices, and other items.

   d.   Drug traffickers frequently maintain books, records, receipts, notes, ledgers, and other documents relating to the ordering, sale and distribution of drugs.  Such documents are generally maintained where the traffickers have ready access to them, such as a trafficker's residence.

e. Drug traffickers frequently maintain financial records evidencing the deposit and transfer of monies in their residences. Such documents are generally maintained where the traffickers have ready access to them, such as a trafficker's residence.

13. Based upon my training and experience, as well as my discussions with other law enforcement officers, I am aware that it is generally a common practice for drug traffickers to maintain in their residences records relating to their drug trafficking activities. Because drug traffickers will "front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances by their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their trafficking business. In addition, because drug transactions are done with cash, frequently drug traffickers have large quantities of United States currency, reflecting money used to pay for drugs, or representing the proceeds from sales thereof.

14. It is also a generally common practice for traffickers to conceal at their residences firearms, ammunition and large sums of money, either the proceeds from drug sales or monies to be used to purchase controlled substances. In this connection, drug traffickers usually keep the firearms and ammunition for protection and typically make use of cash, wire transfers, cashier's check s, and money order to pay for controlled substances. Evidence of

such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in residences.

15.     Further, I know, from both my professional and personal experiences, that people often maintain their cellular telephones in their residences.

16.     Based upon my training, experience and participation in narcotics investigations, distributors of narcotics commonly conceal narcotics, narcotic proceeds and related records in closed containers, such as closets, boxes and/or safes in their residences.

B.     THE SUBJECT PREMISES - 70 DORLON STREET, HEMPSTEAD, NEW YORK, APARTMENT "A", A FIRST-STORY APARTMENT LOCATED IN A TWO STORY, BRICK APARTMENT BUILDING

17.     The SUBJECT PREMISES is a single family apartment located within a two story apartment building with a brick exterior that is located at the corner of Dorlon Street and Martin Luther King Drive in Hempstead, New York.   The number "70" is located over the front entrance to the apartment building.   Upon entry into the first floor of the building, the door of the defendant's residence is visible and marked with an "A" on the lower portion of the door.

18.     The above-referenced defendant RICHARD BLAIN, also known as "Black," resides at the SUBJECT PREMISES and, as stated in paragraphs 3-10 above, has conducted and continues to conduct his narcotics trafficking activities inside the SUBJECT PREMISES.

19.     Based on the facts set forth above, with regard to the SUBJECT PREMISES, there is probable cause to believe that items which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 will be kept at the SUBJECT PREMISES.

V.   CONCLUSION

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant RICHARD BLAIN, also known as "Black," so that he may be dealt with according to law.

WHEREFORE, your deponent also respectfully requests that a search warrant be issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, authorizing agents of the FBI and other law enforcement officers, to search the SUBJECT PREMISES therein and to seize the items described in Attachment A attached hereto, all of which constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841 and 846.

In addition, it is respectfully requested that this Affidavit be filed under seal until further order of Court.   The investigation is continuing.   Premature disclosure of this affidavit, arrest warrant and search warrant could jeopardize the investigation and afford the target the opportunity to destroy evidence and flee from prosecution.

RICHARD V. SHAW
Special Agent, Federal Bureau of Investigation

Sworn to before me this
7th day of July, 2015

/s/ Steven I. Locke

THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

13

## ATTACHMENT A

(Items to be Seized)

(1)    drugs, drug paraphernalia, scales, drug residue, dilutants and materials related to distributing and/or manufacturing drugs;

(2)    books and records, showing cash transactions, prices and quantities of drugs bought and sold;

(3)    books and records showing the names, addresses and telephone numbers of purchasers and suppliers of drugs, as well as the identities of confederates in drug trafficking;

(4)    pagers, electronic organizers, mobile telephones and related bills and receipts;

(5)    motor vehicle records, rental vehicle records, telephone bills, property records showing ownership of assets purchased with drug proceeds;

(6)    firearms and ammunition;

(6)    currency used to purchase drugs, or constituting proceeds of sales of drugs; and

(7)    banking and financial records, to include wire transfer receipts, bank deposit and withdrawal slips, and any other document evidencing a financial transaction that was conducted with proceeds;

all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846.

The items to be seized include any of the above items that are maintained within other closed or locked containers, including safes and other containers that may be further secured by key locks (or combination locks) of various kinds.